FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

2010 AUG 25 P 4: 21

| | |
|---|---|
| EQUIFAX INFORMATION SERVICES LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. 3:10cv609 |
| v. ) | |
| ) | |
| LEXISNEXIS RISK SOLUTIONS FL INC., ) | |
| f/k/a LEXISNEXIS RISK & INFORMATION ) | |
| ANALYTICS GROUP, INC., ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Pursuant to Federal Rule of Civil Procedure 8, Plaintiff Equifax Information Services LLC ("Equifax") respectfully shows the Court the following:

I.     PARTIES, JURISDICTION & VENUE

1. Equifax is a Georgia limited liability corporation having its principal place of business at 1550 Peachtree Street, Atlanta, Georgia 30309.

2. LexisNexis Risk Solutions FL Inc., f/k/a LexisNexis Risk & Information Analytics Group, Inc. ("LexisNexis") is a Minnesota corporation having its principal place of business at 6601 Park of Commerce Boulevard, Boca Raton, Florida 33487. LexisNexis is subject to the jurisdiction of this Court pursuant to Va. Code Ann. §§ 8.01-328.1 because it transacts business in Virginia. LexisNexis may be served with process by serving its registered agent: CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.

3. The Court has jurisdiction over the subject matter of this lawsuit pursuant to 28 U.S.C.§ 1332 because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between citizens of different states.

4.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## II. FACTUAL BACKGROUND

5.  Equifax is a consumer reporting agency as defined by the Fair Credit Reporting Act ("FCRA"). 15 U.S.C. § 1681a(f). As such, Equifax maintains credit files on hundreds of millions of consumers residing in the United States. Equifax sells the information stored in its credit files to credit grantors such as banks, mortgage companies, credit card issuers, *etc.* in the form of "consumer reports," which are used to make underwriting decisions among other things. 15 U.S.C. § 1681a(d).

6.  One category of information that Equifax maintains in its credit files and includes in consumer reports is civil judgments. Thus, if a consumer has had a civil judgment entered against him, Equifax will report the fact of that judgment and other information related to the judgment on consumer reports regarding that consumer.

7.  Equifax does not collect information regarding civil judgments, but instead purchases that information from LexisNexis. LexisNexis is a public records vendor that gathers information on court dockets, including judgments, and sells that information to companies like Equifax.

### The 2004 Agreement

8.  In October 2004, Equifax entered into an agreement (the "2004 Agreement") with Superior Information Services, Inc. ("Superior").

9.  Under Paragraph 1(a) of the 2004 Agreement, Superior agreed to "furnish to Equifax ... certain consumer ... bankruptcy, judgment and lien data...." Judgments were defined

as "civil judgments" on record in certain specified geographic regions of the United States that expressly included the City of Richmond, Virginia.

10. Under Paragraph 1(a) of the 2004 Agreement, it was expressly understood by Superior that the judgment information that Superior provided to Equifax would be incorporated into consumer reports sold by Equifax.

11. Exhibit A to the 2004 Agreement specifies the information that Superior was to provide to Equifax regarding judgments. Among other things, Superior was required to provide Equifax with the "status" of the judgment and the "date [the judgment] satisfied."

12. In the 2004 Agreement, the parties expressly agreed that Superior would update the status of judgments and information that it provided to Equifax on a periodic basis. Specifically, Paragraph 3(e) of Exhibit B to the 2004 Agreement states that:

> Dispositions on all Superior information must be submitted to Equifax as they are made available at the court or at least once per quarter.... In addition, such deliveries must cover dispositions, which occurred over the previous twenty-four (24) months. Dispositions shall include, for example, satisfactions of judgments, releases of liens, dismissals and discharges of bankruptcy. Any dismissal (judgment), reversal, vacated action, expungement, or filed in error (lien), or any similar action which reverses or modifies information on the public records about a consumer must be provided to Equifax in a mutually agreed ... form....

13. Under Paragraph 10(e) of the 2004 Agreement, Superior agreed to indemnify Equifax as follows:

> Superior will indemnify and hold Equifax ... harmless from and against any Losses arising out of, or relating to or incurred as a result of any Claim to the extent that such Claim results in whole or in part from (i) any failure by Superior or its employees to comply with the terms of this Agreement; (ii) any negligence ... of Superior in the course of performing its obligations under this Agreement or (iii) any consumer claim arising or resulting from Superior's failure to ... accurately report the information in a public record as of the date of collection ... or ... use reasonable efforts to

US2008 1515253.1

procure the most current public record status of a public record item.

14. The 2004 Agreement, at Paragraph 10(a) defines "Claims" as any third-party claims, demands, actions, suits or, other proceeding, and defines "Losses" as any and all out-of-pocket costs, fees, losses, damages, claims and expenses, including attorneys' fees, disbursement and court costs.

15. At the time the 2004 Agreement was executed, Superior was a subsidiary of ChoicePoint Services, Inc. ("ChoicePoint"). And, Superior's performance of the 2004 Agreement was guaranteed by ChoicePoint. Specifically, Paragraph 23 of the 2004 Agreement states that:

> In consideration of Equifax's agreement to enter into this agreement with Superior, ChoicePoint Services, Inc.... unconditionally guarantees ... Superior's performance of all provisions and conditions of this agreement....

16. In February 2008, ChoicePoint was acquired by the parent company of LexisNexis. By virtue of that acquisition, LexisNexis succeeded to all of Superior's and ChoicePoint's rights and obligations under the 2004 Agreement.

17. The 2004 Agreement was in force and effect from October 2004 through and including November 1, 2008, which overlaps with the time period covered by plaintiff's claims in this *Soutter* case discussed below.

## The 2008 Agreement

18. On November 1, 2008, Equifax entered into an agreement with LexisNexis (the "2008 Agreement"). The 2008 Agreement is virtually identical, in many respects, to the 2004 Agreement.

US2008 1515253.1

19. Under Paragraph 1(a) of the 2008 Agreement, LexisNexis agreed to "retrieve and deliver to Equifax, solely for incorporation into or use in connection with Equifax's products and services, certain consumer ... bankruptcy, judgment and lien data...."

20. With respect to civil judgments, the 2008 Agreement required LexisNexis to provide Equifax with the "status" of judgments. To the extent judgments were satisfied, reversed, vacated, or otherwise modified, LexisNexis is required to provide that information to Equifax on the same frequency schedule used to obtain the initial judgment. *See* 2008 Agreement, Exhibit A, p. 6.

21. In the 2008 Agreement, Paragraph 9(c), LexisNexis also agreed to indemnify Equifax "from and against any Losses arising out of, or relating to or incurred as a result of any Claim to the extent that such Claim results in whole or in part from (i) any negligence or intentional misconduct of LexisNexis in the course of performing its obligations under this Agreement or (ii) LexisNexis' failure to comply with applicable law."

22. The definitions "Losses" and "Claims" in the 2008 Agreement are identical to the definitions in the 2004 Agreement.

23. The 2008 Agreement is still in force and effect.

### The *Soutter* Case

24. There is, currently pending in this Court, a case captioned *Soutter v. Equifax*, Civil Action No. 3:10-CV-00107 (the "*Soutter*" case). In the *Soutter* case, Plaintiff alleges that Equifax violated the Fair Credit Reporting Act by, *inter alia*, failing to adopt reasonable procedures to ensure maximum possible accuracy in its reporting of the status of judgments that have been set aside, vacated or dismissed with prejudice.

25. In the *Soutter* case, Equifax has denied that it violated the Fair Credit Reporting Act; however, the *Soutter* case constitutes a "Claim" for which LexisNexis must indemnify Equifax under the 2004 and 2008 Agreements.

26. Equifax has made a demand on LexisNexis for indemnification with respect to the *Soutter* case and LexisNexis has not responded to that demand. All other conditions precedent to the filing of this suit have been satisfied.

## COUNT I – INDEMNITY

27. LexisNexis is obliged to indemnify Equifax against the Claims asserted in the *Soutter* case under the applicable indemnity provisions of the 2004 and 2008 Agreements.

28. LexisNexis' failure to do so is a breach of the 2004 and 2008 Agreements that has proximately caused Equifax to suffer Losses and damages in an amount to be proven at trial.

Wherefore, Plaintiff Equifax Information Services LLC respectfully prays that:

(1) The Court try Equifax's claims against LexisNexis to a jury;

(2) The Court enter judgment in favor of Equifax and against LexisNexis on Count I of this Complaint; and

(3) The Court award Equifax such other and further relief as it deems just and proper.

This 25th day of August, 2010.

/s/ John W. Montgomery, Jr.
John W. Montgomery, Jr.
Virginia State Bar No. 37149
Counsel for Equifax Information Services, LLC
MONTGOMERY & SIMPSON LLP
2116 Dabney Road, Suite A-1
Richmond, Virginia 23230
Phone: (804) 355-8744
Fax: (804) 355-8748
Email: jmontgomery@jwm-law.com

US2008 1515253.1