IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| EQUIFAX INFORMATION SERVICES LLC,<br><br>Plaintiff,<br>v.<br><br>LEXISNEXIS RISK SOLUTIONS FL INC.,<br>f/k/a LEXISNEXIS RISK & INFORMATION<br>ANALYTICS GROUP INC.,<br><br>Defendant. | Civil Action No. 3:10CV609 |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(b)(6)
OR, ALTERNATIVELY, TO STAY THE ACTION**

LexisNexis Risk Solutions FL Inc., sued as "f/k/a LexisNexis Risk & Information Analytics Group, Inc.,"[1] through counsel, and in support of its motion to dismiss Equifax Information Services LLC's ("Equifax") complaint, or alternatively, to stay the action, states as follows:

**INTRODUCTION**

Equifax asks this Court to determine that LN is obligated to indemnify Equifax for claims made against it in *Soutter v. Equifax*, No. 3:10-cv-00107 (E.D. Va.) ("*Soutter*"). This Court lacks prudential jurisdiction, as Equifax and LN have no present case or controversy. LNRDRS, not LN, has agreed to indemnify Equifax for losses arising out of claims, to the extent that such

---

[1] LexisNexis Risk Solutions FL Inc. ("LN") operates only part, but not all, of the business "formerly known as" LexisNexis Risk & Information Analytics Group Inc. ("LNRIAG"). LexisNexis Risk Data Retrieval Services LLC ("LNRDRS"), not LN, is the LN affiliate that operates the former arm of LNRIAG's business governed by the public records vendor agreements, and the indemnity provisions set forth therein, at issue here. To the extent that Equifax seeks to hold LN liable for acts of its affiliates, Equifax's complaint is improper and fails to state a claim. Nevertheless, even had Equifax sued the correct LN affiliate, Equifax's complaint should be dismissed or stayed as set forth herein.

claim results from certain conduct by LNRDRS.  Existence of any indemnity thus depends on the nature and cause of Equifax's loss.  LNRDRS indemnifies Equifax for certain losses resulting from LNRDRS's conduct, but does not indemnify Equifax for losses resulting from Equifax's conduct or other circumstances not covered by the agreement.  Equifax's complaint fails to state a claim in that it fails to allege any actual disagreement about the meaning of those agreements.  In the absence of such a disagreement, and as further detailed below, there is no "case or controversy."

In light of the actual terms of indemnities, any dispute that might eventually develop depends on facts that are as yet unknown.  The plaintiff's liability theory in *Soutter* does not necessarily depend on conduct by LNRDRS (and certainly not on conduct by LN); Equifax could ultimately suffer a loss in *Soutter* due exclusively to its *own* conduct or the conduct of others.  Equifax does not allege otherwise.  Until *Soutter* is resolved, the factual predicate for application of the indemnity is unknown.  It is also unclear whether there will be any dispute between LNRDRS and Equifax as to whether, in light of the way in which *Soutter* is resolved, the indemnity does or does not apply.  Equifax's complaint, predicated as it is on future events which may never occur, is not ripe, non-justiciable and must be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

Moreover, Equifax fails to allege sufficient facts to state a plausible, rather than a merely possible, claim against LN or LNRDRS.  As such, Equifax's complaint should be dismissed pursuant to Rule 12(b)(6).

Alternatively, LN respectfully requests that this Court stay this action until Equifax's liability (if any) in *Soutter* has been determined and the conditions precedent to LNRDRS's indemnity obligations occur (if they occur at all) — i.e., until Equifax sustains "Losses" on a "Claim" that is determined to "result from" any wrongful conduct by LNRDRS for which LNRDRS has agreed to indemnify Equifax.

## THE CONTRACTS

In October 2004, Equifax and Superior Information Services, Inc., a predecessor to LNRDRS, entered into a "Public Record Agreement" (the "2004 Agreement"). (Compl. ¶ 8.) In November 2008, Equifax and LNRIAG, another predecessor to LNRDRS, entered into a "Public Record Acquisition Agreement" (the "2008 Agreement").[2] (Compl. ¶ 18.) As relevant to this motion, the 2004 and 2008 Agreements are substantially similar, unless otherwise noted.[3] The 2004 Agreement is governed by Georgia law. (2004 Agreement, § 11.) The 2008 Agreement is governed by New York law. (2008 Agreement, § 10.)

The 2004 and 2008 Agreements each state that LNRDRS will indemnify Equifax for certain "Losses arising out of, relating to or incurred as a result of any Claim *to the extent that such Claim results . . . from*" certain covered conduct by LNRDRS. (Compl. ¶¶ 13, 21 (citing 2008 Agreement, § 9(c); 2004 Agreement, § 10(e)), emphasis added).)

The 2008 Agreement provides that LNRDRS will indemnify Equifax for losses on claims which *result from* "(i) any negligence or intentional misconduct of [LNRDRS] in the course of performing its obligations under this Agreement or (ii) [LNRDRS's] failure to comply with applicable law." (Compl. ¶ 21 (citing 2008 Agreement, § 9(c)).) The 2004 Agreement, in turn, provides that LNRDRS will indemnify Equifax for losses on claims which *result from* "(i) any failure by [LNRDRS] or its employees to comply with the terms of this Agreement; (ii) any negligence or intentional misconduct of [LNRDRS] in the course of performing its obligations under this Agreement or (iii) any consumer claim arising or resulting from [LNRDRS's] failure

---

[2] For purposes of this motion, LNRDRS's predecessors, Superior Information Services, Inc. and LNRIAG, are hereafter referred to collectively as "LNRDRS," unless otherwise noted.

[3] Equifax's complaint makes extensive reference to the 2004 and 2008 Agreements, but attaches neither agreement. (Compl. ¶¶ 8-23, 25, 27-28.) In evaluating this motion to dismiss, the Court may appropriately "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference." *See Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc.*, 576 F.3d 172, 176 (4th Cir. 2009) (citation omitted).

to (y) accurately report the information in a public record as of the date of collection . . . or (z) use reasonable efforts to procure the most current public record status of a public record item." (Compl. ¶ 13 (citing 2004 Agreement, § 10(e)).)

Both agreements define "Losses," as "any and all out-of-pocket costs, fees, losses, damages, claims and expenses, including attorneys' fees, disbursements and court costs" and define "Claims" as "third-party claims, demands, actions, suits or other proceedings." (Compl. ¶¶ 14, 22 (citing (2008 Agreement, § 9(b); 2004 Agreement, § 10(d)).)

*Soutter* is a putative class action on behalf of Virginia consumers "about whom *Equifax* furnished a report to a third party that showed [certain] civil judgment[s]" where court records "showed that the judgment had been satisfied, appealed, vacated or otherwise set aside." (First Am. Compl. *Soutter*, ¶ 24 (emphasis added).) The class in *Soutter* has not been certified.

Equifax has denied that it is liable to the plaintiff in *Soutter*, and there is as yet no determination of Equifax's liability, if any, to the plaintiff there. (Compl. ¶ 25.) From the face of the *Soutter* complaint and based on Equifax's characterizations here of that complaint, the claims in *Soutter* turn not on any alleged wrongdoing or conduct by LN (let alone, LNRDRS), but solely on Equifax's alleged conduct and status as a credit reporting agency with accompanying obligations under the Fair Credit Reporting Act, 15 U.S.C. 1681, *et seq.* ("FCRA"). (*See* Compl. ¶ 25 ("Equifax has denied that *it* violated the [FCRA]." (emphasis added)); *see also Soutter* Compl. ¶ 1 ("This lawsuit challenges the manner in which *Equifax* reports . . . civil judgments and the procedures *it* follows after a consumer disputes the judgment." (emphasis added).) As set forth below, until such a time as Equifax sustains "Losses" on a "Claim" determined to be the "result" of wrongful conduct by LN or LNRDRS, a complaint against either for indemnity fails to state a claim and is moreover not ripe; as such, this Court lacks subject matter jurisdiction over the case.

## LEGAL STANDARDS

Article III of the United States Constitution limits federal court jurisdiction to actions presenting actual cases and controversies. *See Arc of Va.*, *Inc. v. Kaine*, No. 3:09cv686, 2009 U.S. Dist. LEXIS 117677, at *10 (E.D. Va. Dec. 17, 2009) (Payne, J.) (citing U.S. Const. Art. III, § 2). "The concept of ripeness is a central guiding precept in the 'case-or-controversy' requirement of Article III" which prohibits "the issuance of advisory opinions, decisions based on hypothetical facts, or attempts to address abstract issues that lack a concrete basis." *See id.* at *12-13 (citation omitted). "The burden of demonstrating that an action is ripe for adjudication falls on the party asserting the existence of jurisdiction." *Id.* (citing *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006)).

To determine ripeness, courts consider "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *See id.* (citing *Texas v. United States*, 523 U.S. 296, 300-01 (1998)). "[T]he critical question concerning fitness for review is whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all." *Id.* at *14 (citing 15 Moore's Fed. Pract. § 107.76 (Matthew Bender 3d ed.)). Thus, "a case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Id.* (citing *Miller*, 462 F.3d at 319); *see also Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir. 1992). "The hardship facet of the ripeness analysis is measured by 'the immediacy of the threat and the burden imposed' on the plaintiff." *See Arc of Va.*, 2009 U.S. Dist. LEXIS 117677, at *27 (citing *Miller*, 462 F.3d at 319).

"Whether an indemnification issue is ripe for adjudication depends on the facts and circumstances of the case under consideration." *A/S J. Ludwig Mowinckles Rederi v. Tidewater Constr. Corp.*, 559 F.2d 928, 932-33 (4th Cir. 1977) ("*Mowinckles*"). A particularly "important factor" in assessing ripeness of an indemnity claim is "whether resolution of the tendered issue is based upon events or determinations which may not occur as anticipated." *See id.* at 932.

sf-2897430

Because Equifax's claim against LN falls far short of a "ripe" claim, this case should be dismissed without prejudice or, alternatively, stayed.

Regarding additional deficiencies in Equifax's pleading, in determining whether a complaint meets the requirements of Rule 8 to state a claim, a court must first consider only the factual allegations of the complaint — neither its legal conclusions nor its bare recitation of the elements of a claim — in determining whether the plaintiff has made a plain statement of the grounds of her entitlement to relief. Fed. R. Civ. P. 8(a); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]") (internal citation omitted). If the plaintiff has alleged sufficient facts to bear out the elements of the claim, the court must then consider whether the adequately pleaded facts state a "plausible," rather than a merely "possible," claim. *Iqbal*, 129 S. Ct. at 1950; *Twombly*, 550 U.S. at 555.

A "court should consider [a] Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *See Rhulen Agency*, *Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (quoting 5 Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1350, p. 548 (1969)).

## ARGUMENT

I.  **EQUIFAX'S INDEMNITY SUIT IS PREMATURE AND THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER IT.**

It is hornbook law that, to establish a duty to indemnify, "two determinations of liability are involved. The first is that of the indemnitee to the injured party. . . . The second is whether the loss in question is within the terms of the indemnity obligation assumed by the indemnitor." *See* Restatement (Second) of Judgments § 57 cmt. a (1982). Fourth Circuit precedent makes clear that a separate action for indemnity must be dismissed as "premature" and unripe where

these factual predicates to indemnity liability remain unresolved in the underlying action. *See Mowinckles*, 559 F.2d at 932-933. Indeed, the Fourth Circuit has emphasized that a particularly "important factor" in assessing ripeness of an indemnity claim is "whether resolution of the tendered issue is based upon events or determinations which may not occur as anticipated." *See id.* at 932.

Likewise, courts in New York and Georgia — whose laws govern the 2008 and 2004 Agreements, respectively — recognize that indemnity liability turns not on allegations but on the resolution of "actual facts" in the underlying case for which indemnity is sought, "including whether the [indemnitee] becomes legally obligated to pay damages…." *See Westchester Fire Ins. Co. v. Utica First Ins. Co.*, 839 N.Y.S.2d 91, 93 (App. Div. 2d Dep't 2007); *Travelers Prop Cas. Corp. v. Winterthur Int'l*, No. 02 civ. 2406, 2002 U.S. Dist. LEXIS 11342, at *18 (S.D.N.Y. June 25, 2002) ("the duty to indemnify turns not on the allegations of the complaint but on the actual liabilities as borne out by the facts."); *Servidone Constr. Corp. v. Sec. Ins. Co.*, 488 N.Y.S.2d 139, 142 (Ct. App. N.Y. 1985) ("the duty to pay is determined by the *actual basis* for the [indemnitee's] liability to a third person;" moreover "there can be no duty to indemnify unless there is first a *covered* loss." (emphasis added)); *Great N. Paper Co. v. Babcock & Wilcox Co.*, 46 F.R.D. 67, 70 (D. Ga. 1968) (dismissing indemnity claims as premature pending determination of liability and causation in underlying actions and emphasizing "[i]t is not the function of a United States District Court to sit in judgment on these nice and intriguing questions which today may readily be imagined, but may never in fact come to pass." (quoting *Am. F. & C. Co. v. Penn. T. & F. Mut. Cas. Ins. Co.*, 280 F.2d 453 (5th Cir. 1960) (additional citations omitted)).

Here, *Soutter*, the underlying action for which Equifax seeks indemnity, is still pending; the putative class is as yet undefined and uncertified; Equifax denies any liability there (Compl. ¶ 25); and neither Equifax nor the plaintiff in *Soutter* has even alleged (much less proven) that any claims in *Soutter* "resulted" from conduct by LNRDRS that might trigger indemnity obligations under the agreements at issue. Equifax's indemnity claim should thus be dismissed.

*See Mowinckles*, 559 F.2d at 933 (holding unripe indemnity claim "*should not be resolved in this action.*" (emphasis added)); *see also Med. Assurance Co. v. Hellman*, 610 F.3d 371, 375 (7th Cir. 2010) ("The district court was aware that the duty-to-indemnify claim was not ripe, but rather than dismiss that aspect of the case, it included it in the stay that was issued. *The proper disposition, however, would have been to dismiss*." (emphasis added) (citation omitted)); *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 879, 883 (8th Cir. 2005) (affirming dismissal of unripe indemnity claim); *Armstrong v. Ala. Power Co.*, 667 F.2d 1385, 1388 (11th Cir. 1982) (same); *Travelers*, 2002 U.S. Dist. LEXIS 11342 at *18 ("Where the facts on which the Court's decision [regarding indemnity] depends have yet to unfold" the "action is 'not currently a justiciable and ripe controversy and . . . dismissal of the complaint without prejudice is the correct disposition of the action.'" (citation omitted)).

In similar circumstances — i.e., where "no findings of fact [had] been made in the [underlying] lawsuits" and the relevant state law required "evidence found by the factfinder," rather than mere "allegations" for indemnity to arise, the Fourth Circuit has held "the indemnity claim is not ripe," warranting dismissal. *See Ellett Bros, Inc. v. U.S. Fid. & Guar. Co.*, 275 F.3d 384, 388 (4th Cir. 2001) (applying South Carolina law).

Courts in this District have reached the same conclusion. In assessing the ripeness of indemnity claims, courts in this District recognize that indemnity claims are unfit for decision and their dismissal present no hardship to the plaintiff, where, as here, "the plaintiff has denied liability in the underlying suit — and indeed has reiterated that denial in the complaint in this case — [making] the result of the [underlying] action far from certain." *Norfolk Dredging Co. v. City of Chesapeake*, No. 2:07cv130, 2007 U.S. Dist. LEXIS 52673, at *7-8 (E.D. Va. July 20, 2007) (Friedman, J.). In such circumstances, the dismissal does not present a hardship to the indemnity plaintiff nor deprive it of a remedy, "as the plaintiff will remain free to pursue the claim for indemnification . . . following the conclusion of the [underlying] litigation, if the plaintiff is found liable in that action." *See id.* at *10. Moreover, "while the plaintiff will not suffer significant hardship from the court withholding consideration" of the unripe indemnity

claim, "the possibility exists that the defendants will spend resources in defending [the indemnity] case only to have the [underlying] action make the instant issue moot." *Id.* at *11 (citing *Abbot Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). Put simply, such a "case is not ripe for consideration, and the court must dismiss it for lack of subject matter jurisdiction." *See id.* at *12. Equifax's unripe indemnity claim must thus be dismissed for lack of subject matter jurisdiction.

## II.   THE JURISDICTIONAL DEFECTS IN EQUIFAX'S COMPLAINT CANNOT BE RESOLVED BY CONSOLIDATING THIS ACTION WITH *SOUTTER*.

Given Equifax's pending motion to consolidate this action with *Soutter*, Equifax is likely to make the misguided argument that the jurisdictional defects in its complaint can be resolved through consolidation. *See* Fed. R. Civ. P. 42 (permitting discretionary consolidation where "actions before the court involve a common question of law or fact").

Numerous courts, including the Supreme Court, however, expose the folly of attempting to circumvent the bounds of federal court jurisdiction through procedural wrangling. Indeed, "it is axiomatic that the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction." *See Owen Equip. & Erection Co. v Kroger*, 437 U.S. 365, 370, (1978), *superseded by statute on other grounds as stated in Blum v Toyota Motor Sales, U.S.A., Inc.*, No. 90-2428, 1991 US Dist LEXIS 4612, at *6 (D. Kan. Mar. 5, 1991) (citing Fed. R. Civ. P. 82). Likewise, "procedural rules, such as the joinder rules, cannot expand the jurisdiction of the federal courts, and thus, cannot confer standing where a case or controversy otherwise would not exist." *See Frazier v. Preferred Credit*, No. 01-2714, 2002 U.S. Dist. LEXIS 19416, at *30 (W.D. Tenn. July 31, 2002) (citing *Christiansen v. Beneficial Nat'l Bank*, 972 F. Supp. 681, 683 (S.D. Ga. 1997) and *U.S. ex rel. Tenn. Valley Authority v. Easement &Right of Way*, 204 F. Supp. 837, 840 (E.D. Tenn. 1962)). Accordingly, neither the Federal Rules nor third-party practice may be used "in such a way as to extend the jurisdiction of the federal courts." *See Johnson v G. J. Sherrard Co.*, 2 F.R.D. 164, 165-66 (D. Mass. 1941) (quoting "Rule 82 which states: 'These rules shall not be construed to extend or limit the jurisdiction of the district courts of the United States or the

venue of actions therein.'"). Simply put, a federal district court "has no authority to consolidate an action of which it has jurisdiction with one of which it does not." *See Appalachian Power Co. v Region Props., Inc.*, 364 F Supp 1273, 1277 (W.D. Va. 1973) (providing that, where a court lacks jurisdiction over a case, that case is not "pending *before the court*," as required for consolidation under Rule 42) (emphasis added).

Thus, prior to consolidating actions, "[a] District Court should . . . analyze[] the jurisdictional basis of each action independently." *See Cella v. Togum Constructeur Ensemleier En Industrie Alimentaire*, 173 F.3d 909, 913 (3d Cir. 1999) (citing *Cole v. Schenley Indus., Inc.*, 563 F.2d 35, 38 (2d Cir. 1977) (in turn holding "[c]onsolidation under Rule 42(a) . . .cannot effect a merger of the actions or the defenses of the separate parties. It does not change the rights of the parties in the separate suits. . . . We must therefore consider the jurisdictional basis of each complaint separately." (citations omitted)); *see also Chaara v Intel Corp.*, 410 F Supp 2d 1080, 1089-90 (D. N.M. 2005) (consolidation did not destroy separate identity of each of lawsuit nor obviate court's duty to assess its subject matter jurisdiction over second-filed lawsuit) (collecting cases). This separate inquiry is necessary because "while a consolidation order may result in a single unit of litigation, such an order does not create a single case for jurisdiction purposes." *See Cella*, 173 F.3d at 912. Thus, the rules permitting consolidation do not permit Equifax to maintain its unripe action.

Equifax might nevertheless tempt the Court to rely on attractive — though ultimately not dispositive — language in *Mowinkles* to the effect that while the unripe indemnity claims there at issue "*should not be resolved*" in the separately-filed action, "on remand the district court should *consider*, after providing the parties an opportunity to be heard, whether Mowinckles' indemnification claim should be consolidated with [the co-pending wrongful death actions]." *See Mowinkles*, 559 F.2d at 933 (emphasis added).[4] The Fourth Circuit's admonition that the

---

[4] In so holding, the court referenced a Virginia law, applicable to the contract there at issue, permitting impleader of a "third-party who is or may be liable to the defendant for all or part of the plaintiff's claim." *See* 559 F.2d at 933 n.8. The court expressly stated, however, that it

(footnote cont'd…)

10

sf-2897430

district court "consider" consolidation, however, is far from a ruling that subject matter jurisdiction would exist over an unripe indemnity claim. Instead, numerous courts rely on *Mowinkles* for the opposite proposition: that premature indemnity claims should be dismissed for lack of case or controversy. *See*, *e.g.*, *Armstrong*, 667 F.2d at 1388 ("agree[ing] with the Fourth Circuit in [*Mowinckles*]" in holding that "the federal district court… properly dismissed APCo's contribution and indemnity suits as premature.") (citing *Mowinkles*, 559 F.2d at 932); *Camden-Clark Mem. Hosp. Corp. v. St. Paul Fire & Marine Ins. Co.*, No. 6:06-cv-01013, 2010 U.S. Dist. LEXIS 60187, at *28-31 (dismissing claim for declaratory relief regarding indemnity) (citing *Mowinkles*, 559 F.2d at 932); *Norfolk Dredging Co.*, 2007 U.S. Dist. LEXIS 52673, at* 7-8, 10-11 ("That an independent action for indemnification or contribution can be based on such speculative grounds *was rejected by the Fourth Circuit* in *Mowinckles*." (emphasis added)). Equifax may not use consolidation with *Soutter* to circumvent Article III's case or controversy requirements.

---

(…cont'd)
"express[ed] no opinion on whether under Virginia law a *separate* action for indemnity could be maintained." *See id.* (emphasis in original). Here, as in *Mowinkles*, the contracts are governed by the laws of states (New York and Georgia, respectively) which permit impleader of unripe indemnity claims into an underlying action. *See* NY CLS CPLR § 1007 (permitting impleader of "a person not a party who is or *may be* liable to that defendant for all or part of the plaintiff's claim against that defendant." (emphasis added)); O.C.G.A. § 9-11-14 (2010) (similar Georgia provision). Critically, unlike in *Mowinkles*, applicable New York caselaw makes clear that impleader of unripe indemnity claims under NY CLS CPLR § 1007 is an "exception to the general rule" and of "no relevance" in a separate action, where such claims must be dismissed. *See Mars Assocs.*, *Inc. v. NYC Educ. Constr. Fund.*, 513 N.Y.S.2d 125, 133 (1st Dep't 1987); *see also Seneca Ins. Co. v. Certified Moving & Storage Co.*, 2009 NY Slip Op 30348U, 8 (N.Y. Misc. 2009) (collecting New York cases dismissing complaints brought as separate actions for indemnity rather than via impleader); *Schmutz v. Fleet Bank*, *N.A*., 716 N.Y.S.2d 668, 669 (1st Dep't 2000) (independent action for contribution must be dismissed as premature); *Alside, Inc. v. Spancrete Ne.*, *Inc.*, 84 A.D.2d 616, 617 (3d Dep't 1981)(same). Similarly, in Georgia, a claim for indemnity which "goes to liability for a loss which may never arise" because there has been no adjudication of liability in the underlying action is considered premature. *See Great N. Paper*, 46 F.R.D. at 70-71.

### III.     EQUIFAX'S COMPLAINT FAILS TO STATE A CLAIM.

Even if this Court had subject matter jurisdiction, Equifax's complaint should in any event be dismissed pursuant to Rule 12(b)(6).  Neither the complaint in *Soutter* nor the complaint here alleges that LN (or, for that matter, LNRDRS) did anything to give rise to the claims asserted in *Soutter*.  Equifax's complaint against LN fails to allege any facts relating to its exposure in *Soutter* to support a conclusion that a loss in *Soutter* would fall within the contractual indemnities.  Instead, the complaint simply asserts the bare legal conclusion that "the *Soutter* case constitutes a 'Claim' for which [LN] must indemnify Equifax…."  (Compl. ¶ 25).  Under *Iqbal* and *Twombly*, this is not enough.  *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 555.

Indeed, *Twombly* holds that Rule 8 "contemplates the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averment that he wants relief and is entitled to it."  *Twombly*, 550 U.S. at 556 n.3 (internal quotations omitted).  That, however, is exactly what Equifax has done here.

The Equifax complaint quotes extensively from the indemnity language of the 2004 and 2008 Agreements.  (*See* Compl. ¶¶ 8-23.)  *LN does not dispute that the implicated agreements include indemnity provisions*.  Equifax, however, fails to allege facts demonstrating that either agreement's indemnity provision is implicated by *Soutter*.  Equifax baldly alleges that:

- There is, currently pending in this Court, a case captioned *Soutter v. Equifax*, Civil Action No. 3:10-CV-0017 (the "Soutter" case).  In the *Soutter* case, Plaintiff alleges that Equifax violated the Fair Credit Reporting Act by, *inter alia*, failing to adopt reasonable procedures to ensure maximum possible accuracy in its reporting of the status of judgments that have been set aside, vacated or dismissed with prejudice.

- In the *Soutter* case, Equifax has denied that it violated the Fair Credit Reporting Act; however, the *Soutter* case constitutes a "Claim" for which LexisNexis must indemnify Equifax under the 2004 and 2008 Agreements.

- Equifax has made a demand on LexisNexis for indemnification with respect to the *Soutter* case and LexisNexis has not responded to that demand.[5] All other conditions precedent to the filing of this suit have been satisfied.

- LexisNexis is obliged to indemnify Equifax against the Claims asserted in the *Soutter* case under the applicable indemnity provisions of the 2004 and 2008 Agreements.

- LexisNexis' failure to do so is a breach of the 2004 and 2008 Agreements that has proximately caused Equifax to suffer Losses and damages in an amount to be proven at trial.

(Compl. ¶¶ 24-28.)

What facts give rise to Equifax's potential liability in *Soutter*, and how are those facts laid at LN's door? Are there any facts to support that Equifax's liability in *Soutter*, if any, *results* from LNRDRS's conduct, as required for any indemnity by LNRDRS under the agreements? What, specifically, did LN or LNRDRS *do* that relates in any way to the allegations against Equifax in *Soutter*? What facts support the charge that Equifax has sustained any "Losses" as described in the agreements? Are there any facts that underpin the legal conclusion that *Soutter* "constitutes a 'Claim' for which LexisNexis must indemnify" Equifax?

Whatever Equifax may contend LN or LNRDRS did to give rise to any indemnity, it is not alleged in Equifax's complaint. Indeed, Equifax has failed to allege *any* facts other than the existence of agreements between Equifax and LNRDRS, an LN affiliate not named in this action. Equifax fails to plead facts supporting the relevance, if any, of those agreements to Equifax's liability in *Soutter*.

At bottom, Equifax makes a bare averment of indemnity provisions that could potentially be implicated by *Soutter*. Such an averment might support a *possible* claim against LNRDRS — but that is not enough. *Iqbal*, 129 S. Ct. at 1950; *Twombly*, 550 U.S. at 555. Under *Twombly* and *Iqbal*, Equifax must allege facts to support a *plausible* claim. To support a plausible rather

---

[5] Although evidence outside the allegations of the complaint generally is not considered on a motion to dismiss for failure to state a claim, the evidence (if this case ever gets that far) will show that Equifax never made a demand of indemnification on LN (or LNRDRS).

than a merely possible claim, Equifax must allege facts to support that — as required for any indemnity by LN under the agreements — LN committed acts specified in the agreements which resulted in and caused "Losses" to Equifax on a covered "Claim." That Equifax fails to allege any such facts supporting a *plausible* claim is, on its own, a reason to dismiss Equifax's complaint under Rule 12(b)(6). The deficiency in the pleading, however, merely serves to obscure the more serious jurisdictional deficiency described above.

### IV. IN THE ALTERNATIVE, EQUIFAX'S PREMATURE COMPLAINT SHOULD BE STAYED PENDING RESOLUTION OF THE UNDERLYING ACTION.

Though Equifax does not style its complaint as a request for declaratory relief, Equifax essentially seeks a declaratory judgment that LN must indemnify it for the claims in *Soutter*. (*See* Compl. ¶ 27 (alleging that "[LN] is obliged to indemnify Equifax"); *see also id.* at Prayer for Relief ¶ (2) (requesting that "the Court enter judgment in favor of Equifax and against [LN]" on the indemnity claim). The Court should decline this veiled invitation.

In evaluating whether to grant declaratory relief on an indemnity claim, the Seventh Circuit and district courts within the Fourth Circuit have cautioned: "'[a] declaration that A must indemnify B if X comes to pass has an advisory quality; and if the decision would not strictly be an advisory opinion (anathema under Article III) *it could be a mistake*, because it would consume judicial time in order to produce a decision that may turn out to be irrelevant.'" *See Camden-Clark*, 2010 U.S. Dist. LEXIS 60187, at *29 (dismissing claim for declaratory relief regarding indemnity) (quoting *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003)) (emphasis added).

Nevertheless, in the event that this Court declines to dismiss Equifax's complaint for lack of subject matter jurisdiction, this Court should at a minimum stay this case pending resolution of *Soutter*. *See Penn-Am. Ins. Co. v. Mapp*, 461 F. Supp. 2d 442, 459 (E.D. Va. 2006) (deferring resolution of duty to indemnify pending outcome of underlying proceeding); *see also Barney Greengrass, Inc. v. Lumbermans Mut. Cas. Co.*, No. 09cv7697, 2010 U.S. Dist. LEXIS 76781, at *29 (S.D.N.Y. July 27, 2010) (dismissing premature indemnity claim from active docket

"without prejudice to its being reinstated on [the] Court's calendar at such a time, if ever, that the resolution of the [underlying] action renders reinstatement appropriate."); *but see Med. Assur. Co.*, 610 F.3d at 375 (proper disposition of unripe indemnity claim is dismissal, rather than a stay (citation omitted)).

## CONCLUSION

For the foregoing reasons, LN respectfully requests that this Court dismiss Equifax's complaint for lack of subject matter jurisdiction and for failure to state a claim. In the alternative, LN respectfully requests that, at a minimum, the Court stay these proceedings pending a resolution of *Soutter*.

Dated: September 21, 2010                    MURPHY & McGONIGLE, P.C.,


                                             By: /s/ Cameron S. Matheson
                                                 Cameron S. Matheson

                                             James A. Murphy (VSB No. 35380)
                                             Cameron S. Matheson (VSB No. 47145)
                                             Murphy & McGonigle, P.C.
                                             4870 Sadler Road, Suite 301
                                             Glen Allen, Virginia 23060
                                             Telephone: 804.762.5332
                                             Facsimile: 804.762.5361
                                             james.murphy@murphymcgonigle.com
                                             cameron.matheson@murphymcgonigle.com

                                             Attorneys for Defendant LexisNexis Risk
                                             Solutions FL Inc.

## CERTIFICATE OF SERVICE

I certify that on this 21st day of September 2010, I electronically filed the foregoing MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(b)(6) OR, ALTERNATIVELY, TO STAY THE ACTION with the Clerk of the Court using the CM/ECF System, which will send a notification of the filing to the following attorneys of record:

John Willard Montgomery , Jr., Esq.
Montgomery & Simpson, LLP
2116 Dabney Road, Suite A-1
Richmond, Virginia  23230

Craig E. Bertschi, Esq.
Cindy Dawn Hanson, Esq.
Kilpatrick Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia  30309

Attorneys for Plaintiff Equifax Information Services LLC

/s/ Cameron S. Matheson
Cameron S. Matheson (VSB No. 47145)
Murphy & McGonigle, P.C.
4870 Sadler Road, Suite 301
Glen Allen, Virginia  23060
Telephone:  804.762.5332
Facsimile:  804.762.5361
cameron.matheson@murphymcgonigle.com